IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DERRICK ROBERTS, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 2:18-CV-00191-JRG-RSP |
| | § | |
| v. | § | |
| | § | |
| PARIS REGIONAL MEDICAL CENTER, | § | |
| REGIONALCARE HOSPITAL | § | |
| PARTNERS, INC., PARIS HEALTH | § | |
| CARE GROUP, and | § | |
| DR. DONALD WICKOFF, | § | |
| | § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Defendants Paris Regional Medical Center, RegionalCare Hospital Partners, Inc., Paris Health Care Group, and Dr. Donald Wickoff move for an intra-district transfer from the Marshall Division to the Sherman Division of the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). *See* Dkt. No. 19. After considering the parties' written submissions, the Court **DENIES** Defendants' motion to change venue for the reasons below.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Derrick Roberts alleges that he visited Defendant Dr. Donald Wickoff's ("Dr. Wickoff") office in Paris, Texas where Dr. Wickoff refused to treat him because he brought a race discrimination suit against Dr. Wickoff's son-in-law. *See* Dkt. No. 3 (Amended Complaint), ¶¶ 11-12. Plaintiff brings a state-law claim of intentional infliction of emotional distress against Dr. Wickoff and race discrimination claims under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d et. seq. ("Title VI"), against Defendants Paris Regional Medical Center, RegionalCare Hospital Partners, Inc., and Paris Health Care Group. Amended Compl., ¶¶ 27-29.

1

Dr. Wickoff is employed by Defendant Paris Health Care Group ("Paris Health Care"). Dkt. No. 10 (Answer to Amended Complaint), ¶ 8; Dkt. No. 19-1, ¶ 2. Paris Health Care is located in Paris, Texas. *Id.* at ¶ 6. Defendant Paris Regional Medical Center ("Paris Regional") is also based in Paris, Texas. Dkt. No. 19. Paris Regional and Paris Health Care are subsidiaries of Defendant RegionalCare Hospital Partners, Inc.("RegionalCare"). Dkt. No. 10, ¶ 5; Dkt. 9, at 2. RegionalCare is incorporated in Delaware and its headquarters are located in Brentwood, Tennessee, *id.*; Dkt. No. 9-1; Dkt. No. 17, at 2.

On May 9, 2018, Plaintiff filed this suit in the Marshall Division of the Eastern District of Texas. Defendants move to transfer the case from the Marshall Division to the Sherman Division, contending that the Sherman Division is a more convenient venue than the Marshall Division. Dkt. No. 19. In support of their motion, Defendants contend that (1) all parties, except RegionalCare, and all records and witnesses are all believed to be located within the Sherman Division, and (2) all events out of which Plaintiff's claims arise occurred within the Sherman Division. Dkt. No. 19; at 2-3; Dkt. No. 19-1. Plaintiff opposes this transfer and asserts that (1) there is relevant evidence in Tennessee, closer to Marshall, since RegionalCare is located in Tennessee, (2) the Sherman courthouse is not clearly more convenient for trial than the Marshall courthouse, and (3) because Paris Regional and Paris Health Care serve communities throughout Northern Texas, including cities within the Marshall Division, the Marshall Division has a connection to the events underlying this suit. Dkt 25, at 12-13.

**LEGAL STANDARD**

The venue statute permits a district court to transfer a case to another district or division within the district "[f]or the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). The preliminary question under § 1404(a) is whether the case "might have

been brought" in the destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The parties do not dispute that the case could have been brought in either the Sherman Division or the Marshall Division of the Eastern District of Texas.

Once the court resolves the preliminary jurisdiction question, the movant must meet its "*good cause*" burden. *Volkswagen II*, 545 F.3d at 315 (emphasis added). The movant meets its good cause burden by demonstrating that the transferee venue is *clearly more convenient* than the venue chosen by the plaintiff. *Id.* "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* The good cause burden "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.*[1]

"[T]he determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (quoting § 1404(a)). Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. Unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice in forum should be respected. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The private and public interest factors apply as much to transfers between divisions of the same district as to transfers from one district to another. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

---

[1] The parties disagree as to the appropriate deference to which the plaintiff's choice is entitled. The heavy burden traditionally imposed upon defendants by the *forum non conveniens* doctrine was dropped in the § 1404(a) context. *Volkswagen II*, 545 F.3d at 314. The burden of a moving party in a § 1404(a) venue transfer motion is "less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal," i.e., a substantially more convenient alternative. *Id.* Consequently, the avoidance of dismissal through § 1404(a) lessens the weight to be given to Plaintiff's choice of venue, requiring only a good cause demonstration from Defendants. *See id.* at 314-15.

## I. Private Interest Factors

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

### A. Sources of Proof

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Remmers v. United States*, No. CIV. A. 1:09-CV-345, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009). Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, No. 6:13-CV-256, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014) (citing *Volkswagen II*, 545 F.3d at 316) (noting that this factor is still relevant even if documents are stored electronically). This factor turns upon which party "most probably [has] the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* (citing *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); and *Volkswagen II*, 545 F.3d at 314–15). "Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters." *Uniloc USA*, 2014 WL 11609813, at *2 (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). The moving party must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

For witnesses, "[a] district court should assess the relevance and materiality of the information the witness may provide." *Fairfield Indus. Inc. v. Wireless Seismic, Inc.*, No. 2:13-CV-903-JRG-RSP, 2014 WL 4829071, at *2 (E.D. Tex. Sept. 26, 2014) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)). However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information...." *Id.* at 1343–44.

Defendants assert that all known evidence of the events alleged in Plaintiff's amended complaint is located in Paris. Dkt. No. 19, at 6. Specifically, Defendants assert that all documents regarding Plaintiff's appointment with Dr. Wickoff, Plaintiff's intake paperwork from the appointment, and Dr. Wickoff's employment records and contract are located in Paris. Dkt. No. 19-1; Dkt. No. 27, at 3; Dkt. No. 27-1. Thus, according to Defendants, "[w]here all the documents and physical evidence are located in the proposed forum, this factor weighs in favor of transfer." Dkt. No. 19, at 6.

In contrast, Plaintiff claims that Defendants "omit[…] other sources of proof outside of Paris," noting that there is "substantial evidence that Defendant RegionalCare controls [Paris Regional's] employment decisions with respect to physicians like Dr. Wikoff [sic]". Dkt. No. 25, at 4.[2] Plaintiff admits that he is unable to identify all of the specific documents in Tennessee with the particularity expected of Defendants because most of the sources of proof are in Defendants' possession. *Id.* Plaintiff notes that RegionalCare's party representatives, witnesses, employment policies, and business documents are likely located in Tennessee, the state where RegionalCare's headquarters is located. *Id.* Thus, according to Plaintiff, "both divisions are equally convenient" to

---

[2] The "substantial evidence" refers to the "Physician Recruitment" page on PRMC's website that links to RCHP's website. *Id.*; *see also* Dkt. No. 16.

RegionalCare, and for that reason, "district courts in Texas often deny motions to transfer filed by out-of-state defendants like" RegionalCare. *Id.*

It is undisputed that there is evidence located in Paris. The dispute is whether there is any evidence located in Tennessee. While Defendants specifically identified the relevant evidence located in Paris in the Sherman Division, Dkt. No. 19, at 6; Dkt. No. 4 at 3, Plaintiff alleges that employment policies and business documents are likely located in Tennessee. Defendants do not respond to Plaintiff's assertion. Defendants contend that "any consideration of RegionalCare for the purpose of this Motion to Transfer Venue is likely moot" due to a pending motion to dismiss RegionalCare (Dkt. No. 9). *See* Dkt. No. 27 at 4, n. 2.

The Court finds that records relating to the cause of action may be located in Brentwood, Tennessee, a long distance from both the Sherman and Marshall Divisions, but closer to Marshall. Defendants do not acknowledge the possibility that, even if RegionalCare should be dismissed from this action, it could still become a third-party witness or provide other sources of proof. As a corporate defendant at this time, RegionalCare is presumed to have the bulk of its evidence in Tennessee, the state where its headquarters are located.

As discussed below, Paris is located nearly as far from the Plano and Sherman courthouses[3] as from the Marshall courthouse. That fact, combined with the Brentwood evidence, makes this factor neutral.

### B. Availability of Compulsory Process

Rule 45 of the Federal Rules of Civil Procedure provides a district court with authority to compel a witness or party to attend a trial, hearing, or deposition in four ways. First, a witness can be compelled to attend a trial, hearing, or deposition "within 100 miles of where the person resides,

---

[3] Cases assigned to the Sherman Division are randomly assigned, on a 50/50 basis, for trial either in Plano or in Sherman.

is employed, or regularly conducts business in person." Fed. R. Civ. P. 45(c)(1)(A). Second, a "party or a party's officer" may be compelled to travel more than 100 miles to attend a trial, hearing, or deposition "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(B)(i). Third, nonparty witnesses may be required to travel more than 100 miles to attend a trial within the state where they reside, are employed, or regularly transact business in person only if they would not "incur substantial expense" as a result. Fed. R. Civ. P. 45(c)(1)(B)(ii). Finally, a district court has nationwide subpoena power to compel non-party witnesses' attendance at a deposition within 100 miles of where the witness resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

The willingness or unwillingness of a witness to attend trial is relevant to the compulsory process factor. *See Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011) (citing *Gulf Oil Corp.*, 330 U.S. at 508; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). Employees of a party or witnesses that a party otherwise controls are often willing witnesses in effect because compulsory process is not necessary to ensure that these witnesses attend trial. *See id.* Whether compulsory process reaches such witnesses therefore deserves minimal consideration. *See Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-CV-00805-JRG, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014).

Relying upon an outdated version of Rule 45, Defendants argue that four non-party witnesses and all parties, except RHCP, are all located in Paris and surrounding areas and subject only to the Sherman Division's subpoena power. Dkt. No. 19, at 6; Dkt. No. 27, 5. The four non-party witnesses are (1) Beth Bray, Dr. Wickoff's daughter, (2) Josh Bray, Dr. Wickoff's son-in-law and owner of a business in Paris, (3) Penny Skidmore, an employee of Dr. Wickoff, and (4)

Plaintiff's mother. *Id.* Defendants state that all non-party witnesses reside more than 100 miles from Marshall. *Id.* As with the first factor, Defendants contend that potential witnesses in Tennessee are not relevant in this analysis "because they are located in neither the Marshal [sic] nor Sherman Divisions." *Id.* Defendants' arguments are not persuasive as to this factor for three reasons.

First, the Defendants' analysis of this factor fails to include all subparts of Rule 45. Pursuant to Rule 45(c)(1)(B)(ii), the four non-party witnesses Defendants identified may be required to travel more than 100 miles to attend a trial within the state of Texas. Even if the "bulk of the city [of Paris] is located well beyond 100 miles from Marshall," Dkt. No. 27, at 5, these identified witnesses reside, are employed, and/or regularly transact business in person in Texas. Thus, these non-party witnesses may be compelled to travel more than 100 miles within the state of Texas to attend a trial as long as they would not incur substantial expense as a result. It is difficult to imagine that the non-party witnesses in Paris would incur substantial expense traveling to Marshall compared to Sherman or Plano. For the purpose of service of process, distances between cities are measured "as the crow flies," not by the use of road miles. *See Sprow v. Hartford Ins. Co.*, 594 F.2d 412, 417-18 (5th Cir. 1979) (specifically rejecting the use of road miles for lack of uniformity and simplicity). Pictured below are the "crow-flies" depiction of distance between Paris and Plano (Exhibit A), the distance between Paris and Sherman (Exhibit B), and the distance between Paris and Marshall (Exhibit C).



(Exhibit A)



(Exhibit B)

9



(Exhibit C)

The Plano courthouse is 82 miles from Paris, the Sherman courthouse is 60 miles from Paris, and the Marshall courthouse is 103 miles from Paris. If the case is assigned to the Plano courthouse, traveling 21 miles more to Marshall does not present a substantial expense. If the case is assigned to the Sherman courthouse, 40 miles more to Marshall also does not present a substantial expense. In any case, as noted by Plaintiff, when travel over 100 miles could impose substantial expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment. Fed. R. Civ. P. 45(c) advisory committee's notes to 2013 amendment.

Second, at least one non-party witness – Penny Skidmore– is an employee of Dr. Wickoff, and thus compulsory process would not be necessary as she would likely be a willing witness to attend trial. *See Texas Data Co.*, 771 F. Supp. 2d at 643.

Third, while the Court considers it likely that there are material witnesses in Tennessee, neither the Sherman Division nor the Marshall Division could compel these witnesses to attend a trial.

Since the relevant witnesses in the Paris area would be subject to compulsory process either in Marshall or Sherman, this factor is neutral.

### C. Costs for Witnesses

When analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The Fifth Circuit clarified that the 100–mile "threshold" in this factor has greater significance when the distance is greater than 100 miles. *In re Radmax*, 720 F.3d at 289. A district court should assess the "relevance and materiality of the information the witness may provide," but it is not necessary for a party "to show that the potential witness has more than relevant and material information." *In re Genentech*, 566 F.3d at 1343. Additionally, the existence or non-existence of direct flights can impact this analysis. *See Verde v. Stone Ridge, Inc.*, No. 6:14-CV-157, 2014 WL 12489758, at *3 (E.D. Tex. Aug. 25, 2014) (citing *Volkswagen I*, 371 F.3d at 204, n.3).

As to the convenience of RegionalCare witnesses, Plaintiffs argue that the Marshall Division is more convenient than the Sherman Division because the closest airport to the Marshall courthouse is approximately 35 miles while the closest airport to the Sherman courthouse is approximately 68 miles. Dkt. No. 25, at 9-10. Defendants contend that anyone coming from RegionalCare would likely have to layover in the Dallas-Fort Worth Airport for lack of direct flights from Nashville to Shreveport. Dkt. 27, at 5 n. 3.

Anyone from RegionalCare would have to fly into Shreveport and drive 35 miles to Marshall or fly into DFW and then drive either 23 miles to the Plano courthouse or 70 miles to the Sherman courthouse. For witnesses who may be summoned from Tennessee, both divisions would be equally convenient. *See In re Genentech*, Inc., 566 F.3d at 1348 (finding that, under the Fifth Circuit's "100 mile" rule, if witnesses would have to travel a significant distance in any event and would be only slightly more inconvenienced by having to travel to either forum, such inconvenience cannot be given significant weight).

Defendants argue that the costs for the specifically identified witnesses to attend trial in the Marshall Division would be "proportionally greater" than if the trial were held in the Sherman Division, as the distance between the divisions is approximately 71 miles. Dkt. No. 19, at 7. The Court does not agree with this argument. In essence, Defendants argue that the costs of attendance for willing witnesses, as well as for the parties in Paris, will increase because the Sherman Division's courthouses are slightly closer to Paris than the Marshall Division's courthouse. The distance between the two venues is negligible for the specifically identified witnesses and parties in Paris.

Accordingly, this factor is neutral.

### D. Other Practical Problems

"Practical problems include those that are rationally based on judicial economy." *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), aff'd *In re Google, Inc.*, 412 Fed.Appx. 295 (Fed. Cir. 2011). Other practical problems include the place of the alleged wrong, plaintiff's choice of forum, and the possibility of delay. *Empty Barge Lines II, Inc. v. Fisher*, 441 F. Supp. 2d 796-99 (E.D. Tex. 2006). The "place of the alleged wrong is a significant factor in the transfer analysis." *Empty Barge Lines*, 441 F. Supp. 2d

12

at 796. The Plaintiff's choice of forum is given less weight when the plaintiff brings suit outside its home district and when most of the operative facts occurred outside the district. *Id.* at 797. In terms of delay, a prompt trial is not without relevance to the convenience of parties and witnesses and the interest of justice. *Id.* at 798. The Fifth Circuit has clarified that "the garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax*, 720 F.3d at 289.

Here, neither party specifically identifies any practical problems based on judicial economy or delay which would make trial of the case in either Marshall or Sherman more or less expeditious. Defendants allege that the events giving rise to Plaintiff's claims took place in Paris, located in the Sherman Division. Dkt. No. 19, at 8. Defendants additionally allege that there is no connection of the case to the chosen forum other than Plaintiff's choice to file here. *Id.* While this Court recognizes that the event occurred in Paris, this case involves more than just the parties and witnesses in Paris. Another defendant, RegionalCare, and potentially more non-party witnesses and evidence are involved in this matter and located in Tennessee. As explained below, there is a relevant connection between the events giving rise to this cause of action and the Marshall Division given that Defendants provide medical services to patients in this Division. While this Court recognizes that Plaintiff's choice of forum is given *less*, not little, overall weight when Plaintiff brings this suit outside of its home division, the Court finds that the transferee division must be *clearly more* convenient than the chosen venue. Therefore, this factor is neutral.

## II. Public Interest Factors

The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems

13

of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The parties do not dispute the remaining public interest factors – familiarity with the relevant law and potential conflicts of law. These factors have no bearing on this transfer analysis and are thus neutral.

### A. Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved is a factor" in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor is the most speculative and should not alone outweigh the other factors. *Id.*

Defendants contend that they have no reliable way to judge this factor, but they point to the fact that filing cases without any rational relationship to the forum could create congestion. Dkt. No. 19, 8-9. Without further analysis from Defendants, and due to the speculative nature of this factor in general, this factor is neutral.

### B. Local Interest

This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Id.* Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *Volkswagen II*, 545 F.3d at 318.

Defendants focus on the operative facts and argue that none of Plaintiff's allegations relate to conduct that occurred in the Marshall Division. Dkt. No. 19, at 8. Plaintiff focuses on the local interest and responds that the community in the Marshall Division has an interest in this matter because the community is encompassed within the geographic region of Defendants' services. Dkt. No. 25, at 12-13. Paris Regional provides medical services to "Northeast Texas and Southeast

Oklahoma." Dkt. No. 25, at 12. Paris Health Care provides medical care to Paris "and the surrounding areas." *Id.* This geographic region includes not only Paris, but also Marshall.

While the alleged discriminatory actions occurred in Paris, there is a relevant connection between the events giving rise to this cause of action and the Marshall Division given that Defendants provide medical services in this region. The alleged denial of medical services on the basis of race in this region "calls into question the work and reputation of several individuals residing in or near [this division] and who presumably conduct business in [this] community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Thus, this is neutral.

## CONCLUSION

Although not all of the private and public interest factors are implicated, those that are implicated do not demonstrate that the Sherman Division is clearly more convenient. Defendants have not met the "good cause standard." Thus, Plaintiff's choice of venue should be respected. Defendants' motion to transfer (Dkt. No. 19) is **DENIED**.

**SIGNED this 5th day of September, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE